**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

KAREN WARD,                                    :
                                               :      Index No. _____
                              Plaintiff,       :
                                               :      **DECLARATORY**
              v.                               :      **JUDGMENT**
                                               :      **COMPLAINT**
ERNST & YOUNG U.S. LLP,                         :
                                               :
                              Defendant.        :
                                               :
---------------------------------------------------------------X

Plaintiff Karen Ward ("Plaintiff"), by and through undersigned counsel, Wigdor LLP, as

and for this Declaratory Judgment Complaint in this action against Defendant Ernst & Young

U.S. LLP ("EY," the "Company" or "Defendant"), hereby states and alleges as follows:

## PRELIMINARY STATEMENT

### I.   FORCED ARBITRATION FURTHER VICTIMIZES VICTIMS OF SEXUAL MISCONDUCT AND UNLAWFUL DISCRIMINATION, AND PROTECTS COMPANIES AND THE PERPETRATORS

1.      The #MeToo movement has highlighted the need for women who are victims of

sexual misconduct to have access to justice – far too many women are unable to come forward

and hold their harassers accountable.  By now, it is no secret that forced arbitration presents a

barrier to justice for many victims of sexual assault, sexual harassment, discrimination,

retaliation and other unlawful workplace conduct.   Increasingly, companies require employees

to agree to privately arbitrate all legal claims rather than to pursue the claims in court.  Forced

arbitration takes away a victim's right to a trial by a jury before her peers and at the same time

provides secrecy to sexual harassers and employers that subject women to discrimination.  This

double-edged sword perpetuates sexual misconduct and discrimination in the workplace.

2.      The public has heeded some of the messages of the #MeToo movement.  Across the country businesses have changed policies and legislatures have passed legislation barring forced arbitration in certain cases of sexual misconduct.  Many companies and law firms, including Uber, Microsoft, Google, Orrick, and Herrington & Sutcliffe LLP, among others, are voluntarily doing away with forced arbitration, particularly for claims of sexual harassment.  The New York State legislature recently passed a bill that bars forced arbitration in cases of discrimination.[1]  See https://www.nytimes.com/2019/06/20/nyregion/sexual-harassment-laws-ny.html.

3.      These measures are being taken simply in recognition that forced arbitration is immoral, contrary to all notions of justice and counterproductive to remedying sexual misconduct.  Indeed, when Microsoft eliminated forced arbitration for sexual harassment victims, it issued the following quite obvious statement: "**The silencing of people's voices has clearly had an impact in perpetuating sexual harassment.**"

4.      The media has also reported on the damaging impact that forced arbitration has on victims of unlawful workplace conduct.  The New York Times, in "*In Arbitration, a Privatization of the Judicial System*" by Jessica Silver-Greenberg and Michael Corkery, accurately reported that in arbitration "**rules tend to favor businesses, and judges and juries have been replaced by arbitrators who commonly consider the companies their clients.**" See https://www.nytimes.com/2015/11/02/business/dealbook/in-arbitration-a-privatization-of-the-justice-system.html.

---

[1]      Unfortunately, the bill may be overturned, as was a similar bill earlier this month.  See https://www.natlawreview.com/article/federal-court-rules-faa-preempts-new-york-law-prohibiting-mandatory-arbitration.

5.      In the same article, quoting law professor Myriam Gilles, the New York Times reported that because of the proliferation of forced arbitration, "**Americans are actively being deprived of their rights.**" Id.

6.      It is both common knowledge and common sense that arbitrators feel beholden to companies over employees because companies provide repeat business.  As one California appeals court judge said in an interview with the New York Times,

> "'[p]rivate judging is an oxymoron . . . This is a business and arbitrators have an economic reason to decide in favor of the repeat players.'"

Id.

7.      Indeed, the article cited above also reported that,

> in interviews with The Times, **more than three dozen arbitrators described how they felt beholden to companies.  Beneath every decision, the arbitrators said, was the threat of losing business** . . . Victoria Pynchon, an arbitrator in Los Angeles, said plaintiffs had an inherent disadvantage. **"Why would an arbitrator cater to a person they will never see again?"**

Id.

8.      Plaintiff Karen Ward is a former Partner at Defendant EY.  While employed by EY, Ms. Ward was subjected to sexual harassment, unequal pay, gender discrimination, retaliation and an unlawful termination.  Unfortunately for Ms. Ward, she was also forced by EY to enter into an agreement to arbitrate any claims that she might have against EY.  For all of the reasons above, however, Ms. Ward knew that she would never obtain justice arbitrating her claims against EY.  Thus, prior to initiating an arbitration, Plaintiff Karen Ward wrote an open letter to EY's then-CEO, Mark Weinberger.  The letter, which called upon Mr. Weinberger to end forced arbitration for victims of sexual misconduct and discrimination at EY, read, in part,

I [ ] write to respectfully ask that you voluntarily release me from the arbitration provision contained in my partnership agreement so that I can pursue my claims in court, rather than in a secret arbitration. EY's "catchphrase" is: "building a better working world." Forcing women, as a condition of employment, to pursue claims of gender discrimination and harassment only in secret arbitration proceedings does not help to "build a better working world." In fact, it does the opposite. Taking away a woman's right to a trial by a jury of her peers and providing sexual harassers and those that subject women to discrimination with the comfort of secrecy only serves to facilitate workplace harassment and hostility.

. . .

You have said:

> We want [EY] to be the best professional-services organization in the world. When you're doing that you can't ignore half the world, which is women. So first of all, you've got to understand how women think.

Mr. Weinberger, I, as a woman, "think" that forcing women who are sexually harassed and discriminated against to pursue claims in arbitration rather than in court only serves to facilitate sexual harassment and assault. It serves to embolden those who engage in sexual harassment and gender discrimination and, according to studies, makes it more likely that women who are sexually harassed will not come forward. If your statements are sincere, you should jump at the opportunity to make positive changes for women who work for EY. My request to proceed with my case in an open, public forum, rather than in the secrecy of arbitration is just one such example of how to make positive change.

. . .

EY has stated, "We take all allegations of sexual harassment seriously." If EY truly does take allegations of sexual harassment seriously, it will not require its female employees to file and pursue such claims behind closed doors in arbitration.

9.     Mr. Weinberger and EY refused Ms. Ward's request, and, as a result, she was forced to file her claims in arbitration (the "Arbitration").

II.   **VICTIMS OF SEXUAL MISCONDUCT AND UNLAWFUL DISCRIMINATION WHO ARE FORCED INTO ARBITRATION OFTEN HAVE TO PAY HUNDREDS OF THOUSANDS OF DOLLARS MERELY TO HAVE THEIR CLAIMS HEARD**

10.     When supporters of forced arbitration attempt to defend the practice, they often claim that arbitration is cheaper than pursuing claims in court.  This is often not true.

11.     In order to file an action in the United States District Court for the Southern District of New York, a plaintiff must pay only a $450 filing fee.  That is the extent of the cost to access the court system – to access justice.  Plaintiffs do not have to pay judges to oversee litigations, decide motions and hold trials.  Plaintiffs do not have to pay juries to render decisions.  No one would ever stand for a justice system that required otherwise for victims of sexual misconduct.  For a plaintiff to have his or her claim heard by a judge or jury, he or she must pay exactly $450 to the judicial system.  As described herein, arbitration is often exponentially more expensive for plaintiffs.

12.     In Ms. Ward's case, knowing that arbitration can be very costly, she asked EY to agree to pay the costs of the Arbitration.  However, despite the fact that it was EY that forced Ms. Ward to file in arbitration rather than in Court, EY also refused to agree to cover the costs of the arbitration, instead arguing that the parties should split the costs evenly.  In effect, EY was not only refusing Ms. Ward access to true justice, but it also was looking to force her to choose between paying exorbitant arbitration costs and dropping her claims – a decision she would never need to make in court and one that no victim of sexual misconduct should ever have to make.

13.     After a panel of three arbitrators was appointed (the "Tribunal"), Ms. Ward filed a motion asking the panel to require EY to pay the costs of arbitration.  On behalf of Ms. Ward, counsel argued, *inter alia*,

We respectfully submit that it is far more reasonable to direct EY to bear the costs of this arbitration.  EY is a global accounting and consulting firm that did $34.8 billion in revenues last year.  Ms. Ward is an individual who was just recently terminated from her job, and who remains unemployed.  Ms. Ward should not have to reach into her life savings to pay for an arbitration, particularly when the arbitration process was forced upon Ms. Ward by EY to begin with.  Indeed, there is no dispute that Ms. Ward was required by EY to sign an Arbitration Agreement,[2] and she certainly did not expect to have to shell out tens of thousands of dollars just to have her claims of employment discrimination and retaliation heard.

. . .

Requiring an employee who has been sexually harassed, sexually assaulted, discriminated against or retaliated against to shell out tens of thousands of dollars to bring claims against the perpetrators is not reasonable and certainly was not what the drafters of the anti-discrimination and anti-retaliation laws envisioned when they gave women the much-needed right to file these claims.

14.     EY opposed Ms. Ward's motion, continuing to insist that the parties split the costs of the Arbitration.

15.     On March 6, 2019, the Tribunal ruled in EY's favor and held that the parties would be required to split the costs of the Arbitration.  At that time, Ms. Ward began complying with the Tribunal's order.

16.     **However, since that time, Ms. Ward has been billed nearly $200,000 in arbitration costs,** most recently receiving invoices on July 10, 2019 for the payment of an additional **$137,250** in costs, for a grand total (to date) of approximately **$185,000.**

17.     Thus, instead of having to pay only $450 to have her claims heard, Ms. Ward will be required to spend *at least* $185,000.  **This is a percentage increase of 41,000**.  Moreover, the final total will likely be much higher, as the Arbitration is still in the discovery phase.

---

[2]     In addition, on September 26, 2018, Ms. Ward requested that EY waive the Arbitration Agreement so that she could pursue her claims in court.  EY denied this request.

Dispositive motions have not yet been filed and the hearing (scheduled for six days in October) has not yet commenced.

18.     Again, these costs are being charged to Ms. Ward only to have her claims heard by the Tribunal (who will, when all is said and done, have been paid at least approximately $400,000 to act as judge and jury in the arbitration).  It is despicable that any individual who has been subjected to sexual harassment or assault, discrimination or retaliation, equal pay violations, wage and hour violations or any other unlawful workplace conduct would have to pay hundreds of thousands of dollars for nothing more than the right to have her claims heard.

19.     It is impossible to say how many victims of heinous behavior will never have their claims heard knowing that it may cost them hundreds of thousands of dollars to do so.

20.     How many perpetrators of sexual assault and other workplace unlawful conduct will never be held accountable for their conduct because the victim cannot afford to pay hundreds of thousands of dollars to have his or her claims heard?

21.     How many companies will continue to foster environments in which sexual harassment and coercive sexual misconduct are the norm because the women who are victimized by such conduct cannot imagine having to spend hundreds of thousands of dollars to have their claims heard?

22.     How many victims will even be able to afford to pay hundreds of thousands of dollars to have their claims heard?

23.     Requiring a victim to pay hundreds of thousands of dollars to have her claims heard is immoral and facially reprehensible.

24.     And – to add insult to injury – as noted above, the victims of sexual harassment or assault, discrimination or retaliation, equal pay violations, wage and hour violations or any other

unlawful workplace conduct who are able and willing to pay hundreds of thousands of dollars to have their claims heard are not even likely to get a fair hearing.  Instead, their claims will be heard in secret arbitration behind closed doors by arbitrators (many of whom admit that they feel pressure to cater to companies) rather than a jury.

25.     In fact, as recently reported by the Guardian:

> The arbitration system favors employers over employees in several crucial ways.  Chief among them is confidentiality: the secrecy of arbitration proceedings allows companies to avoid embarrassment and public censure.  Mandatory arbitration clauses are often paired with non-disclosure or non-disparagement agreements, which forbid an employee from saying anything that could be construed as negative about the company or its leaders.  Combined, these provisions allow employers that use arbitration to conceal bad behavior by management or a pervasive culture of harassment, and to quietly dispatch those who complain.
>
> . . .
>
> There's also the matter of outcomes.  In arbitration, employees win their cases much less often than in court – and when they do, they are awarded much less money.  There's no right of appeal.  And all of this is agreed to in a contract that's presented to employees without the opportunity for negotiation, at the time of hiring, before they know what sort of company culture they're entering or what their colleagues and superiors might subject them to.

26.     As explained herein, the costs imposed on Ms. Ward under the arbitration agreement at issue also render the Arbitration Agreement (as defined below) unenforceable.

27.     Accordingly, Ms. Ward seeks a declaratory judgment that the Arbitration Agreement is unenforceable and that she is permitted to pursue her claims in this Court instead.

## PARTIES

28.     Plaintiff Karen Ward is a former employee of EY.

29.     Defendant EY is a limited liability partnership with a principal place of business within the State of New York at 5 Times Square, New York, New York 10036.

## JURISDICTION AND VENUE

30.     Ms. Ward brings this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 for a judgment declaring the Arbitration Agreement (as defined below) unenforceable.

31.     This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343 because Ms. Ward's claims herein are brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and her underlying claims arise under, inter alia, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").  This Court also has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's related underlying claims arising under the New York City Administrative Code 8-107 et seq.

32.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district.

## FACTS

### I.     BACKGROUND

33.     Plaintiff Karen Ward joined EY in 2013.  In 2015, Ms. Ward was promoted to the position of Partner.  At that time, Ms. Ward was required – without any ability to negotiate – to agree to EY's "Agreement of Partners and Principals of Ernst & Young U.S. LLP" (the "Agreement").  Relevant portions of the Agreement are attached hereto as Exhibit A.

34.     The Agreement, which again was non-negotiable, contains a section entitled "Dispute Resolution," which in turn contains an arbitration agreement (the "Arbitration Agreement").  The Arbitration Agreement requires Ms. Ward to arbitrate any claims with EY in accordance with the CPR Rules.

35.     Of relevance, the Arbitration Agreement states:

> Costs of the arbitration will be borne by each party as provided in the applicable rules or as ordered by the arbitrators, provided, however, that the fees and expenses of the arbitration, including the initial filing fee, will be apportioned among the parties in a manner that will preserve the enforceability of the arbitration provisions contained in this Section 17.

Ex. A, p. 15 § 17(d)(v).

36.     CPR Rule 17.3 provides that the arbitration panel (the "Tribunal") overseeing the arbitration "may apportion the costs of arbitration between or among the parties in such manner as it deems reasonable, taking into account the circumstances of the case, the conduct of the parties during the proceeding, and the result of the arbitration."  See Rule 17.3 (available at https://www.cpradr.org/resource-center/rules/arbitration/non-administered/2007-cpr-non-administered-arbitration-rules) (last visited July 15, 2019).

37.     On October 12, 2018, Ms. Ward filed an arbitration against EY in which she alleged claims of sexual harassment, gender based discrimination, discriminatory pay, retaliation and unlawful discriminatory and retaliatory termination.

38.     A Tribunal was appointed.  The Tribunal is chaired by the Honorable Nancy Holtz, who is working with panelists Linda Gerstel, Esq. and Harry P. Trueheart, III, Esq.

39.     At the outset of the arbitration, Ms. Ward asked EY to agree to pay the costs of the Arbitration.  EY refused to do so.  As a result, in February 2019, the parties briefed the issue of who should be responsible for the payment of the costs of the Arbitration.  See Exs. B, C and D.

40.     On March 6, 2019, the Tribunal ruled that the parties would be required to split the costs of the Arbitration.  At that time, Ms. Ward began complying with the Tribunal's order.

41.     However, since that time, Ms. Ward has been billed nearly $200,000 in arbitration costs, most recently receiving invoices for an additional **$137,250**, for a grand total (to date) of approximately **$185,000.**  Moreover, the final total will likely be much higher, as the Arbitration is still in the discovery phase.  Dispositive motions have not yet been filed and the hearing (scheduled for six days in October) has not yet commenced.

42.     As explained herein, these most recent invoices, and the requirement that Ms. Ward spend (at least) nearly $200,000 simply to have her claims heard, render the Arbitration Agreement unenforceable.  Accordingly, Ms. Ward seeks a declaratory judgment that the Arbitration Agreement is unenforceable and that she is permitted to pursue her claims in this Court instead.

## II.     <u>DECLARATORY JUDGMENT IS APPROPRIATE</u>

43.     Ms. Ward requests a declaratory judgment that the Arbitration Agreement is unenforceable because, as a result of the decision of the Tribunal requiring the parties to split the costs of the arbitration.  Put simply, under the relevant law, a claimant is not required to arbitrate his or her claims when the cost simply to have the claims heard is hundreds of thousands of dollars more than the costs that would be incurred to pursue his or her claims in court.

44.     The Supreme Court has made clear that federal statutory claims can only be subject to arbitration "***so long as the prospective litigant effectively may vindicate [his or her] federal statutory cause of action in the arbitral forum.***"  <u>Green Tree Financial v. Randolph</u>, 531 U.S. 79, 90 (2000) (citing <u>Gilmer</u>, 500 U.S. at 28 (quoting <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 637 (1985)) (emphasis added).  The Supreme Court also has expressly stated that "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral

forum."  Id. at 90; see also Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2310-11 (2013)

(effective vindication doctrine "would perhaps cover filing and administrative fees attached to

arbitration that are so high as to make access to the forum impracticable.").

45.     Ms. Ward has already been subjected to massive costs that effectively preclude

her ability to vindicate of her statutory rights.  Specifically, Ms. Ward has been billed

approximately $185,000, and there is no guarantee that she will not be billed additional monies.

Indeed, additional billing is likely given that this case is still in the discovery phase and the

parties anticipate dispositive motion practice and a hearing lasting at least six days.

46.     In the absence of the Arbitration Agreement, Ms. Ward would not be subject to

any costs to have her claims heard other than the $450 filing fee she would incur in bringing her

claims in this Court.  See http://www.nysd.uscourts.gov/fees (last visited July 15, 2019).

47.     This fact alone renders the Arbitration Agreement unenforceable under the

effective vindication doctrine.  See Ball v. SFX Broadcasting, Inc., 165 F. Supp. 2d 230, 240

(N.D.N.Y. 2001) (finding arbitration costs prohibitive if an arbitration clause subjects potential

litigants to "costs which would not be incurred in a judicial forum"); E.E.O.C. v. Rappaport,

Hertz, Cherson & Rosenthal, P.C., 448 F. Supp. 2d 458, 463 (E.D.N.Y. 2006) (although finding

that the plaintiff in that case was unlikely to incur substantial costs in arbitration, the court noted

that "it is clear that if the arbitration costs are in the range of $6,000 to $11,250, as she alleges,

these costs would be prohibitively expensive in comparison to the filing fee she is required to

pay to commence a proceeding in federal court").

48.     The costs imposed on Ms. Ward as a result of the Arbitration Agreement also

render the Arbitration Agreement unenforceable due to the chilling effect such costs would have

on other individuals seeking to vindicate their federal statutory rights.  See Morrison v. Circuit

City Stores, Inc., 317 F.3d 646, 669 (6th Cir.2003) (focusing on whether the cost of arbitration may have a "chilling effect" on similarly situated litigants). Obviously, the requirement that a litigant spend $200,000 dollars simply to have his or her case heard would render it much less likely that victims of sexual harassment, unlawful discrimination and retaliation, as well as other violations of federal laws, would actually be willing to pursue their claims.

49.     As a result of the substantial costs the Arbitration Agreement would impose on Ms. Ward, it should be deemed unenforceable in its entirety.

### FIRST CAUSE OF ACTION
### (For Declaratory Judgment)

50.     Plaintiff repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

51.     An actual controversy has arisen and exists between the parties regarding the discrimination and retaliation committed against Ms. Ward in violation of Title VII and the Tribunal's decision to bill Ms. Ward approximately $185,000 (to date) simply to have her claims heard. The controversy is of sufficient immediacy and reality to warrant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

52.     Plaintiff and Defendant are party to an unenforceable Arbitration Agreement that imposes significant costs on Ms. Ward, precluding her from effectively vindicating her federal, state and local statutory rights.

53.     As a result, Ms. Ward is entitled to a declaratory judgment invalidating the Arbitration Agreement.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant for the following relief:

A.    A declaratory judgment that the arbitration agreement between Plaintiff and

Defendant be deemed unenforceable and that Plaintiff may pursue her underlying claims against

Defendant in this Court; and

B.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: July 17, 2019
       New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
       Michael J. Willemin
       Julia Elmaleh-Sachs

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
mwillemin@wigdorlaw.com
jelmaleh-sachs@wigdorlaw.com

*Attorneys for Plaintiff*