UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAREN WARD,

                    Plaintiff,

        v.

ERNST & YOUNG U.S. LLP,

                    Defendant.

Case No. 1:19-cv-06667-JGK

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL
ARBITRATION AND TO STAY
PROCEEDINGS**

**WILLIAMS & CONNOLLY LLP**

Steven M. Farina
Heidi K. Hubbard
650 Fifth Avenue, Suite 1500
New York, New York 10019
Tel: (646) 949-2800
Fax: (646) 949-2801

725 Twelfth Street, N.W.
Washington, DC 20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
sfarina@wc.com
hhubbard@wc.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................. 3

ARGUMENT ........................................................................................................................ 6

I.      THE DELEGATION CLAUSE REQUIRES THAT THE ARBITRATORS DECIDE THE ALLOCATION OF FEES AND ENFORCEABILITY OF THE AGREEMENT. ..................................................................................... 7

II.     THIS COURT LACKS THE AUTHORITY TO REVIEW AN INTERLOCUTORY RULING BY THE ARBITRATORS. ......................... 9

III.    PLAINTIFF CANNOT MEET THE STANDARD FOR VACATING THE ARBITRATORS' RULING. ....................................................................... 12

IV.    THE AGREEMENT CANNOT BE RENDERED UNENFORCEABLE BY THE ALLOCATION OF FEES. ................................................................. 13

CONCLUSION ................................................................................................................... 14

CERTIFICATE OF WORD COUNT AND COMPLIANCE WITH FORMATTING REQUIREMENTS .............................................................................. 15

CERTIFICATE OF SERVICE .......................................................................................... 16

i

## TABLE OF AUTHORITIES

### CASES

*De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787 (S.D. Ohio 2019)......................................9

*Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984) ...........................................................12

*Hamilton v. Navient Sols., LLC*, 18 Civ. 5432 (PAC), 2019 WL 633066 (S.D.N.Y. Feb. 14, 2019) ...............................................................................................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019) ..........................1, 7, 8, 9

*Idea Nuova Inc. v. GM Licensing Grp., Inc.*, No. 10 Civ. 6040 (PKC), 2010 WL 10041842 (S.D.N.Y. Oct. 18, 2010) ...............................................................................10, 11

*Jock v. Sterling Jewelers Inc.*, 188 F. Supp. 3d. 320 (S.D.N.Y. 2016).........................................11

*Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015)......................................................................7

*Kruse v. Sands Bros. & Co.*, 226 F. Supp. 2d 484 (S.D.N.Y. 2002) .............................................12

*Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411 (2d Cir. 1980).................................1, 10, 11

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016).........................................................1

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010).......................................................7, 8

*Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444 (2d Cir. 2011).............................................2

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)............................................11

*T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329 (2d Cir. 2010).......................13

*Virk v. Maple–Gate Anesthesiologists, P.C.*, 657 F. App'x 19 (2d Cir. 2016)................................8

*Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584 (2d Cir. 2016)................................12, 13

### STATUTORY PROVISIONS

9 U.S.C. § 3.............................................................................................................................2, 7

9 U.S.C. § 4.............................................................................................................................2, 6

9 U.S.C. § 10............................................................................................................................10

9 U.S.C. § 12.........................................................................................................................2, 12

## PRELIMINARY STATEMENT

Plaintiff Karen Ward seeks to terminate the arbitration she voluntarily instituted eleven months ago, which had been set for a seven-day hearing to commence on October 15, 2019. Plaintiff contends that the arbitration agreement between her and Defendant Ernst & Young U.S. LLP ("EY") has been rendered unenforceable by the arbitrators' March 2019 preliminarily ruling that the arbitration costs should be "split equally" between the parties "pending further Order of this Tribunal." Order re Reallocation of Fees (Ex. A) at 8.[1]  For several reasons, this Court should not entertain a collateral attack on that ruling or a challenge to the parties' agreement.

*First*, this Court has no authority to determine either the allocation of costs or contract enforceability, because the parties' agreement expressly delegates to the arbitrators the authority to decide both issues. The Supreme Court repeatedly has held, as recently as this past term, that delegation clauses such as these are enforceable, and that "the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019).

*Second*, to the extent that Plaintiff seeks, in effect, judicial review of the arbitrators' ruling, this Court lacks the power to undertake it. "Under the Federal Arbitration Act, a district court does not have the power to review an interlocutory ruling by an arbitration panel." *Michaels v.*

---

[1] All Exhibits cited herein are attached to the Declaration of Steven Farina. On a motion to compel arbitration, the Court may "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (alterations in original).

*Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) (internal citation omitted).  Moreover, even if the arbitrators' ruling had been a final award, and thus reviewable, Plaintiff failed to seek review within the three-month time limit set forth in the Federal Arbitration Act (the "FAA").  *See* 9 U.S.C. § 12.

*Third*, even if the arbitrators' ruling were reviewable and Plaintiff had timely sought review, she could not meet the exceedingly high bar for vacating an award.  The arbitrators issued an eight-page reasoned decision after full briefing.  The ruling addressed the applicable case law and the parties' legal arguments, and found that Plaintiff had "failed to make the requisite showing" that paying her share of the costs would prevent her from vindicating her statutory rights.  Ex. A at 8.  This conclusion is amply supported by the record, and Plaintiff cannot possibly establish that the arbitrators acted "in manifest disregard of the law."  *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011).

An adverse interlocutory ruling by the arbitrators—on issues expressly entrusted to them by the parties—provides no basis for Plaintiff to abandon the arbitration she commenced or to void the agreement she signed.  Filing this action has only increased the costs of litigating Plaintiffs' claims, for both Plaintiff and EY, and delayed a final disposition on the merits.

This Court should return the parties to the pending arbitration.  Pursuant to Section 4 of the FAA, EY seeks "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C § 4.  In addition, pursuant to Section 3 of the FAA, EY requests a stay of this action "until such arbitration has been had in accordance with the terms of the agreement."  *Id.* § 3.

## BACKGROUND

**Plaintiff and Her Tenure as a Principal at EY**

Plaintiff is a sophisticated professional. She graduated from the Wharton School of Business and Stanford University, worked for nearly 20 years at high-powered Wall Street firms, and, during her hiring process, held herself out to EY as capable of generating and closing large, complex real estate transactions.

EY promoted Plaintiff to Principal effective July 1, 2015.[2] From that point on, she led the Firm's real estate investment banking practice. Yet during the next three years, Plaintiff struggled to produce revenues. Indeed, in none of those years did she generate revenues sufficient to cover her own compensation, let alone the compensation and expenses associated with her team. In the summer of 2018, EY made a business decision to shut down its unprofitable real estate investment banking practice and, consequently, separated Plaintiff, along with two male colleagues, from the Firm. In connection with her separation, EY provided Plaintiff $325,200 in severance. In total, EY paid Plaintiff more than $2,500,000 during her time as a Principal.

**The Arbitration Agreement**

When Plaintiff accepted the benefits that came with admission to the Firm, she voluntarily signed and agreed to be bound by the terms of the Agreement of Partners and Principals of Ernst & Young U.S. LLP (the "Agreement") (Ex. B). All signatories to the Agreement—from the Chairperson to the most recently promoted Partner or Principal—promise one another to resolve any dispute with the Firm in "binding arbitration." *Id.* § 17(b).

---

[2] A "Principal" is the non-CPA equivalent of a "Partner" at EY. Both are Members of the Firm.

The Agreement includes what is commonly referred to as a "delegation clause," whereby threshold issues of enforceability are decided by the arbitrators rather than a court:

> Any issue concerning . . . enforceability of the provisions of this Section 17, ***including any claim or contention that all or any part of this Agreement is void or voidable***, will be governed by the Federal Arbitration Act and will be ***resolved by the arbitrators***.

*Id.* § 17(d)(ii) (emphasis added).

With respect to the allocation of arbitration costs, the Agreement provides that this, too, is to be decided "by the arbitrators . . . in a manner that will preserve the enforceability of the arbitration provisions contained in this Section 17." *Id*. § 17 (d)(v).

**The Arbitration Proceedings**

On October 12, 2018, Plaintiff served a Demand for Arbitration on EY.  Plaintiff alleged, among other things, that the Firm had terminated her for discriminatory and retaliatory reasons.  Pursuant to the Agreement, the parties submitted their dispute to the International Institute for Conflict Prevention & Resolution ("CPR").

On November 26, CPR held an initial administrative call with the parties.  During the call, counsel for Plaintiff acknowledged that his client held the equivalent status of Partner at EY, that she received K-1 tax forms rather than W-2s, and that she sought damages in excess of $10,000,000.  *See* Ex. A at 3–4.  Upon receipt of this information, CPR explained that, pursuant to its normal practices, it would require Plaintiff pay half of the arbitration costs.  *See id.*

Using an agreed process, the parties selected three arbitrators from a CPR Panel of Distinguished Neutrals (comprised of former judges, prominent attorneys, and academics).  As part of this process, each prospective arbitrator disclosed his or her rates.

On January 11, 2019, the arbitrators held an initial conference with the parties.  Counsel for Plaintiff asked the arbitrators for an eight-day evidentiary hearing on her claims.  Ultimately,

4

by agreement of the parties, the arbitrators set aside seven days for the hearing, commencing on October 15, 2019.  Counsel for Plaintiff also stated that he wished to seek a ruling requiring EY to pay all arbitration costs in excess of $400.

On January 25, the arbitrators issued Procedural Order No. 1 (Ex. C), which noted, among other things, that "[t]he parties agree and so stipulate that each of the approved arbitrators is approved and accepted by them," *id.* at 1, and "[t]he parties agree that this Panel has the authority to decide all issues raised in the pleadings[,]" *id.* at 2.  The Order set a briefing schedule on the cost allocation issue.  *Id.* at 3.  Plaintiff submitted an opening brief and a reply in support of her position; EY submitted an opposition brief in support of its position.  *See* Exs. D–F.

Plaintiff did not contest the authority of the arbitrators to decide this issue, and in fact argued that "the Arbitration Agreement gives the panel complete discretion with respect to the allocation of costs."  Ex. F at 2.  Nor did Plaintiff argue that she lacked the means to pay her share of the costs, asserting that "while Ms. Ward may be financially capable of paying for the arbitration, that is not a sufficient basis to force her to do so."  *Id.* at 4.

On March 4, the arbitrators ruled that "the arbitration fees shall be split equally between Claimant and Respondent pending further Order of this Tribunal on the issue of allocation of fees."  Ex. A at 8.  The ruling noted that Plaintiff "has been a highly paid, highly placed professional who received significant compensation while at EY and upon separation, a significant severance package," *id.* at 6, and that Plaintiff's counsel had acknowledged that Plaintiff was "financially capable of paying for the arbitration," *id.* at 2.  Based on this record, the arbitrators found that Plaintiff "had failed to make the requisite showing" that paying half the costs would prevent her from vindicating her statutory rights.  *Id.* at 8.

For the next four months, Plaintiff complied with that ruling.  She paid her share of the costs and continued to pursue her claims in arbitration, including taking depositions and seeking an order from the arbitrators to compel additional discovery.  On July 12, 2019—three days after the arbitrators ruled against Plaintiff on a discovery motion—her counsel informed CPR that she would be filing a declaratory judgment action and "will not be paying any additional monies . . . until we receive an order from the court." July 12, 2019 Letter from M. Willemin to C. Grace (Ex. G) at 1.

**The Arbitration Fees**

Plaintiff contends that she has been billed "approximately $185,000," Compl., ECF 1, ¶ 16, but that "the final total will likely be much higher, as the Arbitration is still in the discovery phase[,]" *id.* ¶ 17.  This assertion is misleading, as the billed amounts that Plaintiff references "are intended to cover the Tribunal's fees and expenses through the issuance of a Final Award."  July 10, 2019 Letter from J. Poirier to M. Willemin & S. Farina (Ex. H) at 1.  The fees incurred through "the discovery phase," are much lower.

## ARGUMENT

Section 4 of the FAA provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  Section 3 of the FAA states that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application

of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3.[3]

Here, there can be no dispute that an agreement to arbitrate exists, and that it encompasses Plaintiff's claims, the allocation of costs, and the enforceability of the arbitration provisions. *See* Ex. B, § 17. Plaintiff initiated the arbitration and submitted her claims to CPR for resolution. She stipulated that the "Panel has the authority to decide all issues raised in the pleadings," Ex. C at 2, and conceded that "the Arbitration Agreement gives the panel complete discretion with respect to the allocation of costs," Ex. F at 2. Plaintiff then presented her arguments regarding costs and enforceability to the arbitrators, had a full and fair opportunity to be heard, and lost. That interlocutory ruling—on issues that the parties expressly agreed should be decided by the arbitrators—does not now permit Plaintiff to abandon the arbitration or to void the parties' Agreement.

## I.   THE DELEGATION CLAUSE REQUIRES THAT THE ARBITRATORS DECIDE THE ALLOCATION OF FEES AND ENFORCEABILITY OF THE AGREEMENT.

"The FAA . . . places arbitration agreements on equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted). "The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein*, 139 S. Ct. at 527. An agreement to arbitrate a threshold or "gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the

---

[3] The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings[,]" rather than dismissal, even "when all of the claims in an action have been referred to arbitration." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).

federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does any other." *Rent-A-Center*, 561 U.S. at 70.  When the parties' contract delegates such issues to the arbitrator, "the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 528.

In *Rent-A-Center*, the Supreme Court applied these principles to hold that the arbitrator, not a federal court, must decide whether an agreement is unenforceable because of its purported unconscionability. *See* 561 U.S. at 66, 72–73.  The plaintiff in *Rent-A-Center* had challenged an arbitration agreement as "unenforceable in that it is unconscionable," because of, among other things, a requirement "to split arbitration fees." *Id.* at 66 (internal quotation marks omitted).  The arbitration agreement, however, contained a delegation provision identical in substance to the one included in the Agreement between Plaintiff and EY.  *Compare Rent-A-Center*, 561 U.S. at 68 ("'The Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.'"), *with* Ex. B § 17(d)(ii) ("Any issue concerning . . . enforceability of the provisions of this Section 17, including any claim or contention that all or any part of this Agreement is void or voidable, will be governed by the Federal Arbitration Act and will be resolved by the arbitrators.").  The Supreme Court held that this delegation provision must be enforced, "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72.[4]

---

[4] Where, as here, a party challenges the enforceability of an arbitration agreement that contains a delegation clause, courts routinely grant motions to compel arbitration, properly leaving the question of enforceability to the arbitrators. *See, e.g., Virk v. Maple–Gate Anesthesiologists, P.C.*,

The operative delegation provisions in the Agreement between Plaintiff and EY empower the arbitrators to decide the allocations of arbitration costs, Ex. B § 17(d)(v), and any challenge to the "enforceability" of the arbitration provisions, including "any claim or contention that all or any part of this Agreement is void or voidable[,]" *id.* § 17(d)(ii).  This Court must "respect the parties' decision as embodied in the contract," *Henry Schein*, 139 S. Ct. at 528, and has no "no power to decide" either issue, *id.* at 529.

## II.     THIS COURT LACKS THE AUTHORITY TO REVIEW AN INTERLOCUTORY RULING BY THE ARBITRATORS.

Plaintiff does not purport to seek review of the arbitrators' March 4, 2019 Order.  Rather, she contends that the ruling "render[s] the Arbitration Agreement . . . unenforceable."  Compl. ⁋ 26.  Thus, she has not asked this Court to reallocate the fees, but instead to permit her to "pursue her claims in this Court."  *Id.* ⁋ 27.

But regardless of how Plaintiff chooses to characterize the action, it is a collateral attack on the arbitrators' interlocutory ruling, because the arbitrators already decided this issue.  In her briefing to the arbitrators, Plaintiff argued that "if the current apportionment of costs [by CPR] is confirmed, the Arbitration Agreement will be unenforceable."  Ex. D at 5.  The parties, in all three briefs, joined issue on application of the "effective vindication doctrine."  *See* Ex. D at 3–5, Ex. E at 5–6, Ex. F at 4–5.  And the arbitrators, addressing the case law cited by the parties, expressly

657 F. App'x 19, 23 (2d Cir. 2016) ("[T]he arbitrator would seem to be the appropriate party to determine these issues and related ones."); *De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787, 795 (S.D. Ohio 2019) ("An effective vindication challenge is a challenge to the enforceability of the arbitration agreement. . . .  [T]hese challenges are heard by the arbitrator where, as here, the parties' agreement includes a delegation clause.").

found that "[t]he 'effective vindication' doctrine does not mandate that costs of this arbitration be allocated solely to the Employer." Ex. A at 7; *see also id.* ("There is no dispute that the Agreement provides that the arbitration costs should be apportioned in a manner to preserve the enforceability of the arbitration provision."). Thus, the arbitrators were presented with, and ruled on, the issue of enforceability. Plaintiff's request that this Court reach a contrary conclusion, whatever label she attaches to it, is an improper attempt to seek judicial review of an interlocutory ruling by the arbitrators.

Even absent the delegation clause, this Court would have no authority to review an interlocutory arbitration ruling. "Under the [FAA] ***a district court does not have the power to review an interlocutory ruling by an arbitration panel***." *Michaels*, 624 F.2d at 414 (emphasis added). "The language of the Act is unambiguous: it is only after an award has been made by the arbitrators that a party can seek to attack any of the arbitrators' determinations in court, by moving either to vacate the award, *see* 9 U.S.C. § 10, or to modify or correct it, *see id.* § 11." *Id.* at 414. "In order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them." *Id.* at 413. "Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable." *Id.* at 414; *see also Idea Nuova Inc. v. GM Licensing Grp., Inc.*, No. 10 Civ. 6040 (PKC), 2010 WL 10041842, at *4 (S.D.N.Y. Oct. 18, 2010) ("Accordingly, as the district court lacks the power to review an interlocutory determination of venue, petitioner's application for

relief from the AAA's venue determination setting the location of the parties' arbitration in California is denied.").[5]

Here, there can be no suggestion that the arbitrators' ruling constitutes "their complete determination of all claims submitted to them."  *Michaels*, 624 F.2d at 413.  The arbitrators have not ruled on the merits of Plaintiff's claims.  Moreover, their ruling on the allocation of fees is not even final.  The Order states:  "[T]he arbitration fees shall be split equally between Claimant and Respondent pending further Order of this Tribunal on the issue of allocation of fees."  Ex. A at 8; *see also id.* at 6 ("The Tribunal has the discretion and authority to enter further orders regarding the allocation of the remainder of the fees both prior to and after an Arbitral Award . . . and will review cost allocations as the case progresses and at its conclusion.").  Accordingly, judicial review of the arbitrators' ruling is not available.

In any event, even if the ruling were a final order and thus reviewable, Plaintiff failed to seek review within the applicable time limit.  Section 12 of the FAA provides:  "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within

---

[5] "The fact that courts sometimes exercise jurisdiction over a limited group of other kinds of interlocutory arbitral rulings is not to the contrary."  *Jock v. Sterling Jewelers Inc.*, 188 F. Supp. 3d. 320, 326 (S.D.N.Y. 2016).  "For instance, courts . . . have reviewed arbitrators' 'clause construction awards,' where, *e.g.*, they are threshold rulings determining whether the parties' arbitration agreement even permits class arbitration.  *See, e.g.*, *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)."  *Id.*  "But judicial review of clause construction awards constitutes a 'limited exception' to the general rule that non-final arbitration awards are not subject to review."  *Id.*

*three months* after the award is filed or delivered." 9 U.S.C. § 12 (emphasis added). "The three month period prescribed by 9 U.S.C. § 12 is a statute of limitations and the failure to bring a timely motion is an absolute bar to an application seeking vacatur or modification." *Hamilton v. Navient Sols., LLC*, 18 Civ. 5432 (PAC), 2019 WL 633066, at *4 (S.D.N.Y. Feb. 14, 2019) (internal quotation marks omitted); *see also Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 177 (2d Cir. 1984) ("[W]e hold, as have other circuits, that a party may not move to vacate after three months from the time the arbitration panel issued its award."); *Kruse v. Sands Bros. & Co.*, 226 F. Supp. 2d 484, 486 (S.D.N.Y. 2002) ("The Second Circuit has made clear that there is no exception to this three month limitations period."). Plaintiff brought this action more than four months after the arbitrators' ruling on the allocation of costs and enforceability. Thus, even if judicial review were available, Plaintiff failed timely to seek it.[6]

## III.   PLAINTIFF CANNOT MEET THE STANDARD FOR VACATING THE ARBITRATORS' RULING.

If the ruling were reviewable, Plaintiff could not meet the standard for vacating an award. "[T]he FAA permits a court to vacate an arbitral award 'where there was evident partiality or corruption in the arbitrators,' 9 U.S.C. § 10(a)(2), or 'where the arbitrators were guilty . . . of any . . . misbehavior by which the rights of any party have been prejudiced,' *id.* § 10(a)(3)." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016). Neither of these grounds is applicable here. "A court may also 'set aside an arbitration award if it was rendered in manifest

---

[6] The mechanism Plaintiff chose to seek review is also procedurally defective. "[T]he statutes and rules do not permit a party to initiate a challenge to an arbitration award by filing a complaint." *Kruse*, 226 F. Supp. 2d at 486 (internal quotation marks and citation omitted). "A request for vacatur must be made in the form of a motion." *Id.*; *see also* 9 U.S.C. § 12.

disregard of the law.'" *Id.* at 588–89 (quoting *Schwartz,* 665 F.3d at 451). But Plaintiff cannot meet that standard.

"A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a 'heavy burden.'" *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (citation omitted). A court may vacate an award on this ground only if "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Zurich*, 811 F.3d at 589. Plaintiff cannot make such a showing. The arbitrators issued an eight-page reasoned decision after full briefing. The ruling addressed the applicable case law and the parties' legal arguments, and found that Plaintiff simply "failed to make the requisite showing" that paying half the costs would prevent her from vindicating her rights. Ex. A at 8. Indeed, Plaintiff's own lawyer did not contest her ability to pay these costs. *Id.* at 2. The arbitrators' ruling is well grounded in the record and the applicable case law. There is no legal basis to disturb it.

## IV.  THE AGREEMENT CANNOT BE RENDERED UNENFORCEABLE BY THE ALLOCATION OF FEES.

Finally, even if this Court had plenary authority to revisit these issues, the Agreement could not be deemed unenforceable, which is the relief that Plaintiff seeks. *See, e.g.*, Compl. ¶ 27 ("Ms. Ward seeks a declaratory judgment that the Arbitration Agreement is unenforceable and that she is permitted to pursue her claims in this Court instead."). The parties' agreement expressly provides that "fees and expenses of the arbitration, including the initial filing fee, will be apportioned among the parties *in a manner that will preserve the enforceability of the arbitration provisions*." Ex. B § 17(d)(v) (emphasis added). Thus, pursuant to the plain language of the Agreement, it cannot be rendered unenforceable by the allocation of fees. The only available

13

remedy, consistent with the text of the Agreement, would be to allocate the fees in some other way so as to render the Agreement enforceable.  Neither the arbitrators nor this Court would have the power to void the Agreement.

## **CONCLUSION**

This action has no basis in law and never should have been brought.  It wastes judicial resources, needlessly adds to the expense of the litigation, and has delayed resolution of Plaintiff's underlying claims.  Plaintiff should be directed to return to the pending arbitration for a final hearing on the merits of her claims.

Dated:  September 11, 2019          Respectfully submitted,

*/s/ Steven M. Farina*
WILLIAMS & CONNOLLY LLP

Heidi K. Hubbard
Steven M. Farina

650 Fifth Avenue
Suite 1500
New York, NY 10019
Telephone:  (646) 949-2800
Facsimile:  (646) 219-4870

725 Twelfth Street, NW
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029

*Counsel for Defendant Ernst & Young U.S. LLP*

## <u>CERTIFICATE OF WORD COUNT AND COMPLIANCE</u>
## <u>WITH FORMATTING REQUIREMENTS</u>

1.  This memorandum of law contains 4151 words, excluding the parts of this document exempted

    from the word count under the Individual Practices of Judge John G. Koeltl.

2.  This memorandum of law complies with the font, spacing, and type size requirements laid out

    in the Local Rules of the United States District Courts for the Southern and Eastern Districts

    of New York and in the Individual Practices of Judge John G. Koeltl.


Dated:  September 11, 2019                          /s/ *Steven M. Farina*
                                                    Steven M. Farina

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:  September 11, 2019                        <u>/s/ *Steven M. Farina*</u>
                                                 Steven M. Farina