UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————

KAREN WARD,

                         Plaintiff,              19-cv-6667 (JGK)

         - against –                             OPINION & ORDER

ERNST & YOUNG U.S. LLP,

                         Defendant.
——————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff, Karen Ward, brought claims in an arbitration

against the defendant and her former employer, Ernst & Young

U.S. LLP ("EY") pursuant to an arbitration agreement between the

parties. Ward alleged that the defendant engaged in

discrimination and retaliation in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the

New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 et

seq. After the arbitral panel (the "panel") entered a

preliminary order that fees and costs incurred during the

arbitration would be split equally between the parties, the

plaintiff brought this action seeking a declaratory judgement

under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202,

that the arbitration agreement is unenforceable due to the

panel's fee-allocation order, which the plaintiff alleges

prevents her from being able effectively to vindicate her

underlying claims in the arbitral forum. The defendant now moves

to compel arbitration and stay the proceedings in this Court, arguing that any attack on the fee allocation award in this Court is improper at this time for various reasons. For the following reasons, the defendant's motions to compel arbitration and to stay proceedings in this Court pending arbitration are **granted.**

### I.

The following facts are taken from the parties' submissions and are undisputed unless otherwise noted.

### A.

In 2013, the plaintiff began working at EY in the Transaction Real Estate group as an Executive Director. Willemin Affirm. Ex. A, at 10; Farina Decl. Ex. E, at 2.[1] On July 1, 2015, the plaintiff became a Principal at EY. Farina Decl. Ex. E, at 3. Throughout 2014 and 2015, the plaintiff made complaints to various members of EY's senior management regarding alleged discriminatory treatment that the plaintiff allegedly suffered based on her sex. Willemin Affirm. Ex. A, at 4, 7-8. On August 14, 2018, the plaintiff was informed that she would be terminated effective October 31, 2018. Id. at 24.

---

[1] Unless otherwise noted, page numbers correspond to ECF page numbers and not to any page numbers that may be present in the underlying documents submitted in this case.

As an Executive Director, the plaintiff was paid $350,000 yearly. Farina Decl. Ex. A, at 3. As a Principal, she was paid $665,000 yearly. <u>Id.</u> Upon termination, the plaintiff received a severance package of approximately $325,000. <u>Id.</u>

**B.**

When the Plaintiff accepted her promotion to Principal in July, 2015, she received and signed a copy of the Agreement of Partners and Principals of Ernst & Young U.S. LLP (the "Agreement"). Compl. ¶ 33. Section 17 of the Agreement sets out the procedures for the resolution of disputes between the signatory and EY. Section 17(a) provides that

> [a]ny dispute, claim or controversy between (i) the Firm or any of its affiliates, and their respective predecessors, successors and assigns, on the one hand, and any Member or Former Member, on the other or (ii) any Member or any Former Member and any other Member or Former Member (to the extent such dispute, claim or controversy relates to their association with the Firm or any of its affiliates and/or its business and affairs), whether arising or being asserted during or after the termination of any such individual's relationship with the Firm (a "Dispute"), shall be resolved as provided in this Section 17.

Farina Decl. Ex. B, at 3. The Agreement commits signatories to resolve all disputes with EY by "submitting them to voluntary mediation . . . [and] if such mediation is not successful, then to binding arbitration." <u>Id.</u> Section 17(d) provides that "[a]ny arbitration hereunder will be conducted in accordance with the procedures set forth herein and the Rules for Non-Administered

Arbitration of CPR (the "Rules") as in effect on the date
hereof, or such other rules mutually agreed upon by the
parties." <u>Id.</u> at 4. Section 17(d)(ii) provides that

> [a]ny issue concerning the extent to which any Dispute
> is subject to arbitration, or the formation,
> applicability, interpretation or enforceability of the
> provisions of this Section 17, including any claim or
> contention that all or any part of this Agreement is
> void or voidable, will be governed by the Federal
> Arbitration Act and will be resolved by the
> arbitrators.

<u>Id.</u> at 4. In addition, Section 17(d)(v) provides that

> [c]osts of the arbitration will be borne by each party
> as provided in the applicable rules or as ordered by
> the arbitrators, provided, however, that the fees and
> expenses of the arbitration, including the initial
> filing fee, will be apportioned among the parties in a
> manner that will preserve the enforceability of the
> arbitration provisions contained in this Section 17.

<u>Id.</u> Section 17.3 of the 2007 CPR Rules provides that

> the tribunal may apportion the costs of arbitration
> between or among the parties in such manner as it deems
> reasonable, taking into account the circumstances of
> the case, the conduct of the parties during the
> proceeding, and the result of the arbitration.

Farina Decl. Ex. A, at 4. Finally, Section 20(d) of the
Agreement provides that

> [i]f any provision of this Agreement or the
> application thereof to any Member, Former Member or
> circumstance is determined by a court of competent
> jurisdiction or arbitration panel to be invalid, void
> or unenforceable, the remaining provisions hereof, or
> the application of such provision to Members, Former
> Members or circumstances other than those as to which
> it has been held invalid or unenforceable, will remain
> in full force and effect and will in no way be
> affected, impaired or invalidated thereby . . . This

> Section 20(d) will apply to all provisions of this
> Agreement, including, without limitation, each of the
> limitations on the authority of the arbitrators
> contained in Section 17(d)(iv) as well as the other
> provisions of Section 17.

Farina Decl. Ex. M, at 3.

## C.

On October 12, 2018, the plaintiff filed a Demand for Arbitration against the defendant for discrimination and retaliation under Title VII, for discrimination and retaliation in violation of the New York City Human Rights Law, and for defamation.[2] Willemin Affirm. Ex. A, at 26-27. The plaintiff alleges that, throughout her time at EY, she was subjected to sexual harassment and a hostile work environment on account of her sex. Willemin Affirm. Ex. A, at 2. The plaintiff also alleges that she was subjected to retaliation, and eventually retaliatory termination, because of her complaints about her treatment. Id. at 5-8. Pursuant to the terms of the Agreement, the parties submitted the dispute to the International Institute for Conflict Prevention and Resolution. Farina Decl. Ex. A, at 2.

---

[2] On September 24, 2018, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. Willemin Affirm. Ex. A, at 25. When the press subsequently reported on this Charge, the defendant made statements alleged by the plaintiff to be false and defamatory. Id. at 25-26. The plaintiff does not discuss the defamation allegations in her complaint in this action. Compl. ¶ 37.

On January 11, 2019, the panel held a preliminary conference in the arbitration, at which time the plaintiff raised an issue as to how the fees and costs associated with arbitration would be allocated between the parties. Farina Decl. Ex. C, at 4. The parties submitted briefs to the panel on the issue. Id., Exs. D-F. The plaintiff urged the panel to issue an order compelling EY to pay all of the costs and fees incurred by the plaintiff over and above $400, the amount that the plaintiff alleged she would have to pay to file the underlying action in the United States District Court for the Southern District of New York. Id., Ex. D, at 2. The plaintiff argued, among other things, that application of the so-called "effective vindication" doctrine should lead the arbitrators to order EY to pay all costs and fees above $400 in order to prevent the plaintiff from bearing prohibitively high expenses that would leave her unable to press her rights in the arbitral forum.[3] Id. at 4-6. EY opposed the plaintiff's request, noting, among other things, that the plaintiff is a sophisticated professional who does not lack financial resources. Id., Ex. E.

On March 4, 2019, the panel issued an Order on Reallocation of Fees (the "Order"). Farina Decl. Ex. A. The panel found that the Agreement was the relevant document to look to determine how

---

[3] The "effective vindication," as applicable in this case, is discussed in more detail below.

to allocate the fees between the parties. <u>Id.</u> at 5. The panel
then found that the panel had discretion under the 2007 CPR
Rules and the Agreement to apportion fees and costs as the panel
saw fit. <u>Id.</u> at 7. The panel noted "that Ward has been a highly
paid, highly placed professional who received significant
compensation while at EY and upon separation, a significant
severance package." <u>Id.</u> The panel went on to note that the
"effective vindication" doctrine did not require that EY bear
the full costs in the case, because the plaintiff had "failed to
make the requisite showing" about the amount of fees she was
likely to incur in arbitration and about her inability to pay
those fees. <u>Id.</u> at 9. For those reasons, the panel ordered "that
the arbitration fees shall be split equally between Claimant and
Respondent pending further Order of this Tribunal on the issue
of allocation of fees." <u>Id.</u>

On May 18, 2019, plaintiff's counsel informed defense
counsel of the plaintiff's intention to seek a declaratory
judgment that the arbitration provision is invalid in light of
the panel's decision to split the fees and costs between the
parties. Farina Decl. Ex. I, at 2. Plaintiff's counsel
reiterated this intention on May 30, 2019. <u>Id.</u>, Ex. J, at 2. On
July 10, 2019, counsel for the plaintiff and the defendant were
informed that the parties should split between themselves
$274,500 in fees that "are intended to cover the Tribunal's fees

and expenses through the issuance of a Final Award." Farina
Decl. Ex. H. On July 17, 2019, the plaintiff filed the complaint
in this case for a declaratory judgment. The plaintiff alleges
that the arbitrators' Order allocating costs between the parties
renders the Agreement unenforceable because the plaintiff is
unable to vindicate her statutory rights effectively in the
arbitral forum. Compl. ¶¶ 51-53.

The defendant now moves to compel arbitration of the
plaintiff's claims and moves to stay proceedings in this case
pursuant to Sections 3 and 4 of the Federal Arbitration Act
("FAA"). In her opposition to the motion to compel arbitration,
the plaintiff has submitted a declaration attesting to her
current financial situation, her continued unemployment, and her
total assets. Ward Decl. ¶¶ 4-19.

## II.

### A.

The defendant first moves to compel arbitration on the
ground that the delegation clause in Section 17(d)(ii) of the
Agreement commits the resolution of the plaintiff's claim in
this Court to the panel.

Under 9 U.S.C. § 4, "a district court must enter an order
to arbitrate upon being satisfied that the making of the
agreement for arbitration or the failure to comply therewith is
not in issue." Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 22 n.27 (1983) (quotation marks omitted).
"Whether a dispute is arbitrable comprises two questions: '(1)
whether there exists a valid agreement to arbitrate at all under
the contract in question . . . and if so, (2) whether the
particular dispute sought to be arbitrated falls within the
scope of the arbitration agreement.'" Hartford Acc. & Indem. Co.
v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001)
(quoting Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp., 88
F.3d 129, 135 (2d Cir. 1996)).

     In this case, the plaintiff does not dispute, and the Court
agrees, that there is a valid agreement to arbitrate between the
parties, the formation of which is not in question.[4] The parties
also do not dispute that the underlying employment
discrimination and retaliation dispute between the parties falls
within the scope of the arbitration agreement. The question
presented on this motion to compel arbitration is whether the
particular dispute sought to be arbitrated, namely the
plaintiff's claim that the agreement to arbitrate is
unenforceable under the "effective vindication" doctrine, must
be submitted to arbitration.[5]

---

[4] The plaintiff makes various references in her papers that she was "forced"
into the arbitration agreement, but the plaintiff does not appear to contend
that the Agreement is invalid on the ground that a valid contract was not
formed as a matter of state law contract principles.

[5] The effective vindication doctrine is a "'judge-made' exception to the FAA
which 'allow[s] courts to invalidate agreements that prevent the effective
vindication of a federal statutory right.'" Sutherland v. Ernst & Young LLP,

Unless the parties clearly provide otherwise, the question of arbitrability – whether an agreement requires the parties to arbitrate a particular dispute – is an issue for judicial determination. <u>See</u> <u>Specht v. Netscape Commc'ns Corp.</u>, 306 F.3d 17, 26-27 (2d Cir. 2002) (Sotomayor, J.); <u>see also</u> <u>Applebaum v. Lyft, Inc.</u>, 263 F. Supp. 3d 454, 457 (S.D.N.Y. 2017). "The determination of whether parties have contractually bound themselves to arbitrate a dispute – a determination involving interpretation of state law – is a legal conclusion." <u>Specht</u>, 306 F.3d at 26. EY argues that the Court cannot entertain the plaintiff's claim for a declaratory judgment that the Agreement is unenforceable on the ground that the panel's Order prevents the plaintiff from effectively vindicating her statutory rights because the Agreement's delegation clause in Section 17(d)(ii) commits consideration of that gateway issue to the panel. EY is correct.

"The FAA reflects the fundamental principle that arbitration is a matter of contract." <u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. 63, 68 (2010). A delegation provision

---

726 F.3d 290, 298 (2d Cir. 2013) (per curiam) (alteration in original) (quoting <u>American Exp. Co. v. Italian Colors Rest.</u>, 570 U.S. 228, 235 (2013)). "It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her statutory rights." <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 90 (2000). The plaintiff's argument in this case is that the panel's Order, requiring the parties to share the arbitral costs equally, renders the Agreement unenforceable on "effective vindication" grounds.

contained in an agreement to arbitrate, which purports to delegate the resolution of certain questions to the arbitrator, rather than the district court, must be enforced in the same way as any other contract provision. See id. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). The question presented by EY's motion to compel arbitration is not whether the plaintiff's "effective vindication" argument is meritorious, but whether, as a matter of contract interpretation, the agreement to arbitrate delegates the resolution of that preliminary question to the panel. See Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019) ("A court has 'no business weighing the merits of the grievance' because the 'agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.'") (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986)).

     In Rent-A-Center, the Supreme Court considered an arbitration agreement signed by an employee as a condition of employment containing a delegation provision that provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute

relating to the interpretation, applicability, enforceability or
formation of this Agreement including, but not limited to any
claim that all or any part of this Agreement is void or
voidable." 561 U.S. at 66. After the employee brought suit in
federal district court and the employer sought to compel
arbitration of the employee's claims, the employee opposed the
motion to compel arbitration on the ground the arbitration
agreement was unconscionable under Nevada state law. Id. The
Supreme Court found that under the clear terms of the delegation
provision, the employee's claim that the arbitration agreement
was unenforceable must be submitted to the arbitrator to decide.
Id. at 72. The Supreme Court distinguished between challenges
that an employee might bring, when faced with such a delegation
provision, to "the delegation provision specifically" and
challenges "to the validity of the Agreement as a whole." Id.
The Supreme Court found that whereas the former kind challenge
should be heard by the district court because the district court
would have to decide whether the delegation provision itself was
enforceable before compelling arbitration under 9 U.S.C. § 4,
the latter kind of challenge does not implicate the validity of
the delegation provision itself, and therefore the district
court's only task is to construe the delegation provision
according to its terms and then, if the delegation provision so

dictated, compel arbitration of the underlying claim that the agreement as a whole was invalid. Id.

In this case, Section 17(d)(ii) of the Agreement provides that "[a]ny issue concerning the extent to which any Dispute is subject to arbitration, or the formation, applicability, interpretation or enforceability of the provisions of this Section 17, including any claim or contention that all or any part of this Agreement is void or voidable, will be governed by the Federal Arbitration Act and will be resolved by the arbitrators." Farina Decl. Ex. B, at 4.

This case and the delegation provision in Section 17(d)(ii) of the Agreement are virtually indistinguishable from Rent-A-Center and the delegation provision at issue in that case. In both cases, the relevant arbitration agreement contained a delegation provision that unambiguously delegates to the arbitrator questions concerning the formation or interpretation of the arbitration agreement, including whether any part of the agreement is void or voidable. In both cases, the employee opposed the motion to compel arbitration not by challenging the delegation provision specifically, but on the ground that the arbitration agreement as a whole was unenforceable. Just as in

Rent-A-Center, the plaintiff's argument brought in this action must be decided by the arbitration panel.[6]

It makes no difference that the employee in Rent-A-Center argued that the arbitration agreement was void under the state law contract principle of unconscionability, while the plaintiff in this case argues that the Agreement is void under the federal, judge-made doctrine of "effective vindication." The Supreme Court in Rent-A-Center made clear that the relevant distinction is between challenges to a delegation provision specifically, which the Court can entertain notwithstanding the existence of a delegation provision, and challenges to an arbitration agreement as a whole, which must be submitted to the arbitrator in the face of a valid delegation provision. The plaintiff's papers state that the plaintiff is "challenging the efficacy of the arbitration agreement itself on account of the fact that its application by the Tribunal violates the effective vindication doctrine." ECF No. 25, at 15. The plaintiff states that her "declaratory judgement action stems from the fact that

---

[6] The plaintiff herself recognized that the panel is the proper forum in which to present her "effective vindication" claim, at least in the first instance. The plaintiff presented her "effective vindication" argument to the panel prior to the panel's issuing the Order. To the extent that the plaintiff believes the panel erred in the Order or that the panel did not have an accurate sense of the plaintiff's financial resources, the plaintiff presumably is welcome to renew her argument to the panel and present new evidence in line with the panel's order "that the arbitration fees shall be split equally between Claimant and Respondent pending further Order of this Tribunal on the issue of allocation of fees." Farina Decl. Ex. A, at 9 (emphasis added).

the Agreement, <u>as applied by the Tribunal</u>, has operated as a
substantive bar to her ability to effectively vindicate her
federal, state and local statutory rights." <u>Id.</u> at 11 (emphasis
in original).

Because the plaintiff's challenge in this Court is clearly
directed at the Agreement as a whole, and not at the delegation
provision specifically, the plaintiff's "effective vindication"
challenge to the Agreement, brought in this Court as a claim for
a declaratory judgment, must be submitted to the arbitrators
under <u>Rent-A-Center</u> and the plain language of the delegation
provision. <u>See</u> <u>Vargas v. Bay Terrace Plaza LLC</u>, 378 F. Supp. 3d
190, 197 n.9 (E.D.N.Y. 2019) (noting that an "effective
vindication" argument based on a shortened limitations period
"could be interpreted as either a challenge to the Agreements as
a whole or to the statute of limitations provision specifically;
in any event, it is certainly not a challenge to the delegation
provision and thus not for the Court to decide.").

**B.**

The plaintiff also improperly seeks interlocutory review of
a non-final order of the panel.

"Under the Federal Arbitration Act . . . a district court
does not have the power to review an interlocutory ruling by an
arbitration panel." <u>Michaels v. Mariforum Shipping, S.A.</u>, 624
F.2d 411, 414 (2d Cir. 1980). If "arbitrators make an interim

15

ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable." Id.; see also SH Tankers Ltd. v. Koch Shipping Inc., No. 12-cv-375, 2012 WL 2357314, at *5 (S.D.N.Y. June 19, 2012) ("[A]s long as the Panel may still revisit the Ruling, it is neither final nor subject to judicial review.").

In this case, the panel's Order that the plaintiff argues prevents her from effectively vindicating her statutory rights in the arbitral forum is clearly not a final ruling. In the disposition of the Order, the panel explicitly stated "that the arbitration fees shall be split equally between Claimant and Respondent pending further Order of this Tribunal on the issue of allocation of fees." By indicating that the "[p]anel may still revisit the [r]uling" on the issue of the allocation of fees following the Order, the panel made clear that the Order "is neither final nor subject to judicial review." Id.

The plaintiff does not appear to dispute the principle that district courts may not review interlocutory orders issued by an arbitral panel, nor does the plaintiff appear to dispute that the Order in this case was such an interlocutory order. Instead, the plaintiff argues that the Court may review the Order now because the Order is ancillary to the merits of the underlying action and is reviewable because it provided "interim equitable relief."

However, the cases relied upon by the plaintiff to support this position are inapposite. Those cases concerned situations in which the arbitrators had required a party to post a security bond or escrow account pending the final award. See, e.g., Home Indem. Co. v. Affiliated Food Distribs., Inc., No. 96-cv-9707, 1997 WL 773712, at *2-3 (S.D.N.Y. Dec. 12, 1997); Atlas Assurance Co. of Am. v. Am. Centennial Ins. Co., No. 90-cv-5474, 1991 WL 4741, at *2-3 (S.D.N.Y. Jan. 16, 1991). The plaintiff provides no authority that in a case like this, where the arbitrators have made a non-final ruling with respect to the allocation of fees, as distinct from an order requiring that a security bond be posted, a district court may review that order in an interlocutory posture. Arbitral orders requiring that security bonds be posted are distinguishable from arbitral orders concerning the allocation of fees. When arbitrators have required that security bonds be posted, the arbitrators had entered an order of "interim relief in order to prevent their final award from becoming meaningless." See British Ins. Co. of Cayman v. Water St. Ins. Co. Ltd., 93 F. Supp. 2d 506, 516 (S.D.N.Y. 2000) (collecting cases). Unlike a security bond, which ensures that a final award, once issued, is actually satisfied, an order allocating fees is simply a procedural mechanism to ensure that the arbitration can happen at all. In addition, because the panel explicitly stated that the Order

17

allocating fees could be revisited, a collateral attack on the order in this Court is impermissible. See SH Tankers, 2012 WL 2357314, at *5 (finding that the "collateral order doctrine" did not permit review of an interim order of the arbitrators requiring a security bond to be posted because the tribunal intended to revisit the ruling).

Therefore, the Court cannot review the panel's non-final March 4, 2019 Order on an interlocutory posture.

### C.

Moreover, to the extent that the plaintiff now seeks to vacate the March 4, 2019 Order, the plaintiff has failed to comply with the time limits imposed by the FAA on parties challenging arbitral rulings.

Under the FAA, any motion "to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. "The three month deadline is 'not subject to extension.'" HRB Prof'l Res. LLC v. Bello, No. 17-cv-7443, 2018 WL 4629124, at *4 (S.D.N.Y. Sept. 27, 2018) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1984)).

As an initial matter, the fact that the plaintiff brought this action as a claim for a declaratory judgment, rather than as a motion to "vacate, modify or correct" the March 4, 2019 order, does not affect the applicability of the three-month

deadline in 9 U.S.C. § 12. The relief that the plaintiff requests in this action is a declaration that the Agreement is unenforceable and that the Court vacate the Order. The nature of the plaintiff's requested relief means that this action seeking a declaratory judgment is subject to the three-month deadline in 9 U.S.C. § 12. See Corey v. N.Y. Stock Exch., 691 F.2d 1205, 1213 (6th Cir. 1982) ("The three month notice requirement in section 12 for an appeal of [an] award . . . is meaningless if a party to the arbitration proceedings may bring an independent action . . . outside of the statutory time period provided for in section 12.").

The action is plainly untimely. The Order was issued on March 4, 2019. The plaintiff's ability to file a motion to vacate, modify, or correct the award therefore expired on June 4, 2019 and this action for a declaratory judgment, filed on July 17, 2019, is barred by 9 U.S.C. § 12.

The plaintiff's argument to the contrary, that the panel's ruling was not ripe for review until the bill from the panel was delivered to the plaintiff on July 10, 2019, is without merit. To the extent that the plaintiff argues that the three-month deadline under 9 U.S.C. § 12 should be tolled in some way, that argument fails because "there is no common law exception to the three-month limitations period on the motion to vacate" because an "action to enforce an arbitration award is a creature of

statute and was unknown in the common law." <u>Florasynth</u>, 750 F.2d at 175. In any event, the plaintiff's "ripeness" argument is undermined by the undisputed facts in this case. The plaintiff made her "effective vindication" argument to the panel prior to the panel's issuing the March 4, 2019 Order, and therefore it makes no sense for the plaintiff to say that her "effective vindication" argument, which is now packaged in this Court as a claim for a declaratory judgment, was unripe until she received the bill from the panel on July 10, 2019. The plaintiff clearly believed that the argument was "ripe" for review when she made her submissions to the panel prior to the March 4, 2019 Order. Further, plaintiff's counsel expressed an intention to file this current action as early as May 18, 2019, which was within the three-month period. <u>See</u> Farina Decl., Exs. I & J. There is no legal or factual basis to conclude that the current action is timely when it was filed outside the three-month limit under 9 U.S.C. § 12.

The action in this case is therefore time barred under 9 U.S.C. § 12.[7]

---

[7] In addition to being time barred, the plaintiff's challenge in the form of an action for a declaratory judgment appears to be improper because "[a] request for vacatur [of an arbitration award] must be made in the form of a motion" and cannot be challenged "by filing a complaint or an application." <u>Kruse v. Sands Bros. & Co., Ltd.</u>, 226 F. Supp. 2d 484, 486-87 (S.D.N.Y. 2002); <u>see also</u> <u>Serv. Emps. Int'l, Inc. v. Pryor</u>, No. H-10-1577, 2012 WL 13060079, at *4 (S.D. Tx. June 11, 2012) ("To attack the Arbitrator's decisions, SEII must move to vacate, modify, or correct an order pursuant to the FAA; this suit for a declaratory judgment and injunction is improper.").

D.

Finally, for purposes of completeness, it should be noted that the plaintiff's challenge to the allocation of expenses in the March 4, 2019 Order, which is for the arbitration panel to decide, would not mean that the Agreement as a whole would be unenforceable.

In accordance with the FAA's preference for encouraging arbitration, "the appropriate remedy when a court is faced with a plainly unconscionable provision of an arbitration agreement—one which by itself would actually preclude a plaintiff from pursuing her statutory rights—is to sever the improper provision of the arbitration agreement, rather than void the entire agreement." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 124-25 (2d Cir. 2010) (quotation marks omitted).

In this case, the Agreement instructs the panel to allocate fees "in a manner that will preserve enforceability of the arbitration provisions contained in this Section 17." Farina Decl., Ex. B, at 4. The Agreement also contains a severability provision that states that "[i]f any provision of this Agreement or the application thereof . . . is determined by a court of competent jurisdiction or arbitration panel to be invalid, void or unenforceable, the remaining provisions hereof . . . will remain in full force and effect and will in no way be affected, impaired or invalidated thereby." Farina Decl., Ex. M., at 3.

The severability clause expressly notes its applicability to the arbitration provisions in the Agreement in Section 17. Id. In light of the severability provisions in the Agreement, the plaintiff's "effective vindication" argument, if successful, would not result in the entire Agreement being voided. See Ragone, 595 F.3d at 124-25; Castellanos v. Raymours Furniture Co., Inc., 291 F. Supp. 3d 294, 301-02 (E.D.N.Y. 2018) (severing a limitations period in an arbitration agreement that was unenforceable under the "effective vindication" doctrine from the remainder of the arbitration agreement). At most, the argument would result in vacatur of the March 4, 2019 Order and the need for the panel to allocate fees in such a way that the plaintiff could effectively vindicate her statutory rights.

Therefore, the Court would not find that the entire Agreement is unenforceable based on the plaintiff's "effective vindication" challenge.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the defendant's motion to compel arbitration and its motion to stay proceedings in this Court are **granted**. The Clerk

22

is directed to stay this case. The Clerk is also directed to

close Docket No. 19.

**SO ORDERED.**

**Dated:     New York, New York**
           **June 23, 2020**

                                        ____/s/ John G. Koeltl_____
                                              John G. Koeltl
                                        United States District Judge